```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
BANCROFT BURKE,

                Plaintiff,

        -against-                    MEMORANDUM AND ORDER
                                     08-CV-3600 (JS)(ARL)

DEER-PARK UNION FREE SCHOOL
DISTRICT,

                Defendant.
----------------------------------X
APPEARANCES:
For Plaintiff:     David George Gabor, Esq.
                   Gabor & Gabor
                   400 Garden City Plaza, Suite 406
                   Garden City, NY 11530

For Defendant:     Rondiene Erin Novitz, Esq.
                   Gary Edward Dvoskin, Esq.
                   Keith V. Tola, Esq.
                   Cruser Mitchell & Novitz, LLP
                   175 Pinelawn Road Suite 301
                   Melville, NY 11747
```

SEYBERT, District Judge:

Pending before the Court is a motion for summary judgment filed by Deer-Park Union Free School District ("Deer Park" or "Defendant") seeking dismissal of every claim contained within the Complaint filed by Bancroft Burke ("Burke" or "Plaintiff"). Plaintiff brought this action against Deer Park, his former employer, alleging (1) employment discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), of N.Y. Executive Law § 296, and of 42 U.S.C. § 1981; (2) retaliation under Title VII; and (3) breach of contract. For the reasons discussed below, Defendant's

motion is GRANTED.

BACKGROUND

Deer Park is a public school district located in Suffolk County, New York that provides educational services to more than 4,000 students in pre-kindergarten through the 12th grade level. On February 16, 2005, the Deer Park Board of Education approved the appointment of Plaintiff, an African-American male, to the position of Assistant Superintendent for Business and Operations for a three-year probationary period. Defendant's Local Rule 56.1 Statement ("Def. Stmt.") ¶¶ 1-4. Plaintiff's chief responsibility in this role was to oversee Deer Park's budget comprising more than $90 million. Id. ¶ 5.

Since each school year's budget is created one year in advance and Plaintiff was employed in 2005, developing Deer Park's 2006-2007 budget became Plaintiff's first task. It is undisputed that Elizabeth Marino, Deer Park's superintendent of schools starting from October 1, 2006, was deeply disappointed both with Plaintiff's resulting budget itself and with the process by which it was developed. Plaintiff's Amended Rule 56.1 Statement ("Pl.'s Stmt.") ¶ 29. In a May 2007 memorandum to Plaintiff, for example, Marino wrote:

> Although the 2006-2007 budget was approved, the process by which it was developed confused and frustrated administrators who function within its limits. Much distrust was generated by the lack of communication about the disproportionate amount of monies in various

> budget codes with respect to the importance and necessity of programs as well as mandated functions. This disconnect manifested itself in the inordinate amount of transfers occurring between budget codes this year as well as a late start to some necessary programs for students.

Def.'s Mot. Summ. J., Ex. C.

Marino added that she was "extremely disappointed to note that [Plaintiff had] chosen to disregard [her budgetary advice] on several occasions," resulting in improvident decisions which "reflected poorly on the credibility and competence of central office administration." Id.

More specifically, Plaintiff exhibited the following undisputed shortcomings, among others. First, after the 2006-2007 budget was presented to and approved by Deer Park's Board of Education, Plaintiff "found" an additional $600,000 in revenue, prompting the calling of an emergency meeting that made the administration appear embarrassingly inept. Def. Stmt ¶ 42.

Second, Marino requested that Plaintiff calculate a projected tax rate by estimating fixed costs for the year and revenues based on a 3% increase in state aid; subsequently, when aid was announced at a lower rate of 1.3%, Marino asked Plaintiff for an updated estimate. When Plaintiff proved unable to explain why the revenue amount remained the same despite the change in state aid, it "became apparent that Mr. Burke made up the difference by substantially increasing his projection for interest

earned . . . greatly undermin[ing] [Marino's] confidence in the accuracy of the original accounting." Def.'s Mot. Summ. J., Ex. C.

Third, Plaintiff assured Marino that the 2006-2007 budget would have no changes to the budget codes other than those previously discussed. This explains why Marino was "extremely dismayed" to find that Plaintiff unilaterally entered unauthorized amendments to the budget codes. Id.

Fourth, Plaintiff submitted a so-called Fund Balance Analysis, which he was regularly required to do, that was found to be replete with errors by the Superintendent and an independent auditor, one Michael Nawrocki. Def. Stmt ¶ 51; Affidavit of Michael Nawrocki, p. 1.

Prompted by those mishaps among others, the Deer Park Board of Education and audit committee began to voice concerns about Plaintiff's competence and ability to continue in his position as the Assistant Superintendent for Business in the district. Def. Stmt ¶ 63[1]. Finally, on July 12, 2007, Marino advised Plaintiff that his employment would be terminated. Id. ¶ 64. Plaintiff tendered his resignation before the termination was effectuated. Id. ¶ 65.

Plaintiff claims that his final paycheck shorted him

---

[1] Plaintiff purports to contest the allegation that the Board of Education expressed such concerns about him in meetings held for that purpose, but then concedes that the meetings in fact took place. See Pl.'s Stmt. ¶ 63.

4

$3,295.41 since his salary calculation ought to have been based on an eleven and a half, rather than twelve, month work year. Beyond his ipse dixit, he offers no evidence in support of this contention against Deer Park's proof that Plaintiff's employment contract provides for a twelve month position. Def.'s Mot. Summ. J., Ex. E.

On September 4, 2008, Plaintiff brought suit against Deer Park, alleging that Deer Park's decision to deny him tenure reflected Superintendent Marino's racial discrimination and that the insufficient paycheck was an act of retaliation for Plaintiff's decision to engage in a protected activity.

Plaintiff's entire case rests solely on three stray remarks he alleges were made by Marino. First, Plaintiff testified that, in the Spring of 2007, Marino told him that "Jim Cummings [the principal of a middle school in Deer Park] said that he did not want the nigger to be running the building." Pl.'s Stmt. ¶ 161. Burke does not allege that by "nigger" Jim Cummings referred to him. Id. More importantly, Burke does not allege that, by relating Cummings' slur, Marino thereby shared his sentiment or endorsed it. Rather, he alleges that, if Cummings used racist language, Marino "should have taken action because there is no room for a racist principal in any school." Pl.'s Mem. Opp. Mot. Summ. J., p. 7. But Burke offers no evidence indicating that, Marino, in fact, took no such action.

Second, in casual conversation with Plaintiff, Marino

5

purportedly referred to an incident in which a girl urinated on the floor of a high school gym in Deer Park. Plaintiff took issue with Marino's decision to identify the girl in question as "the Haitian girl who urinated on the floor" instead of "the girl who urinated on the floor" or "the person who urinated on the floor." Pl.'s Stmt. ¶ 97.

Finally, Plaintiff once observed to Marino that minority teachers were under-represented in the district. Marino allegedly replied: "if one could find any minorities that were qualified to teach." Pl.'s Stmt. ¶ 93.

It is undisputed that Plaintiff never complained of racial discrimination by anyone employed at Deer Park other than Marino and that Plaintiff is not aware of any other Deer Park employees who have made <u>any</u> complaints in connection with Marino, still less ones alleging racial animus. Pl.'s Stmt. ¶¶ 26-27.

## DISCUSSION

I. <u>Rule 56: Standard of Review</u>

A district court may properly grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); <u>Anderson v. Liberty Lobby,</u>

6

Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"In assessing the record to determine whether there is a genuine issue to be tried . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

Mere conclusory allegations, speculation or conjecture will not avail a party opposing summary judgment, see Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996), and "[f]actual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (citing 10A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2725, at 93-95 (1983)).

In discrimination cases, "trial court[s] must be cautious about granting summary judgment to an employer when . . . its intent is at issue. . . . Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994). Thus, a court should not grant an employer's motion for summary judgment unless "the evidence of discriminatory intent is so slight that no

7

rational jury could find in [the P]laintiff's favor." Id. at 1226. Be that as it may, this deferential standard should not be applied so as to foreclose the possibility of summary judgment in all employment discrimination cases. See Weinstock v. Columbia Univ., 224 F.3d 33, 41-42 (2d Cir. 2000) ("the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.'" (quoting McLee v. Chrysler Corp., 38 F.3d 67, 68 (2d Cir. 1994)).

A. Plaintiff's Title VII Discrimination Claim

The anti-discrimination provision of Title VII forbids employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race." 42 U.S.C. § 2000e-2(a)(1).

Since Plaintiff presents no direct evidence of discriminatory treatment based on his race, the Court analyzes his claim under the McDonnell Douglas burden-shifting framework; the burden lies initially with the Plaintiff to make out a prima facie case for his discrimination claim. See Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004). If Plaintiff carries that burden by establishing a prima facie case, the burden shifts to the Defendant to "articulate some legitimate, nondiscriminatory reason for the termination." Id. Once the Defendant establishes that, the burden shifts once again to Plaintiff to demonstrate that

the legitimate, nondiscriminatory reason cited is merely pretextual. Id.

To establish a prima facie case for racial discrimination under Title VII, the Plaintiff must show (1) membership in the protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. See, e.g., Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006).

In deciding whether the Plaintiff has established a prima facie case under the McDonnell Douglas burden-shifting framework, the key question is whether there exists sufficient evidence in the record with which a reasonable trier of fact could find an inference of discrimination. See James v. N.Y. Racing Ass'n, 233 F.3d 149, 157 (2d Cir. 2000).

"Stray remarks" alone will not support a Title VII discrimination suit. Danzer v. Norden, 151 F.3d 50, 56 (2d Cir. 1998). What is more, a plaintiff's subjectively held beliefs relating to allegedly discriminatory comments are not sufficient to support an inference of discrimination. See Grady v. Affiliated Cent., Inc., 130 F.3d 553, 561 (2d Cir. 1997).

Here, Defendant does not dispute that Plaintiff meets the first three prongs of his prima facie case. Def. Br. at 9. It is quite plain to the Court, however, that Plaintiff demonstrably

fails to establish the fourth prong, because he fails to adduce evidence suggesting that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. In this regard, the Court notes that his claims of racially based discrimination are predicated on three comments alone.  Second, those stray comments are equivocal: it is not at all clear to the Court that referring to a Haitian girl as a Haitian girl constitutes even a racial, much less a racist, observation.  Nor, necessarily, is Marino's alleged comment that she would employ more minorities "if one could find any minorities that were qualified to teach."  Pl.'s Stmt. ¶ 93.  Third, Plaintiff has neither adduced evidence to impute Jim Cummings' use of a racial slur to Marino, the sole decision-maker, nor identified any evidence to suggest that Marino did not take appropriate action against Cummings for using that slur.  Pl.'s Stmt. ¶ 161; Pl.'s Mem. Opp. Mot. Summ. J., p. 7.

Indeed, in view of how well established is the law in this circuit on the principle that stray remarks unrelated to the adverse action alone cannot support a discrimination claim, the Court finds the Plaintiff's prosecution of this claim fairly unprincipled.  See, e.g., Tomassi v. Insignia Financial Group, Inc., 478 F.3d 111, 115 (2d Cir. 2007); Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 n. 2 (2d Cir. 2001); Danzer v. Norden Systems, Inc., 151 F.3d 50, 56 (2d. Cir. 1998); Woroski

10

v. Nashua Corp., 31 F.3d 105, 109-10 (2d Cir. 1994).

Plaintiff does nothing to further his position by falsely attesting to the Court that one of his exhibits shows, "quite interestingly, that the reduction in professional staff for Black or African American employees the same year Plaintiff was terminated went from thirty Black or African American employees to only seven." Pl.'s Mem. Opp. Mot. Summ. J., p. 17. The Court has reviewed Exhibit R to Plaintiff's opposition papers and concludes that, in the most charitable interpretation, Plaintiff has mistakenly cited an incorrect exhibit. At worst, Plaintiff wilfully misleads the Court. For on page 34 of the exhibit, under a banner reading "total professional staff in this district" and "District 2007", the total number of African-American professional staff is listed as sixteen (16), more than twice the number cited by Plaintiff. Pl.'s Mem. Opp. Mot. Summ. J., Ex. R. And, although Exhibit R contains no similar document for 2005, pages 47-65 contain such data for several individual schools. These pages reflect only nine (9) African-Americans in professional staff positions in Fall 2005, not 30.

In any event, even if the Court were to conclude that Plaintiff did establish a prima facie case of discrimination--which it does not--Defendant has amply met its burden of showing a legitimate, non-discriminatory reason for firing Plaintiff (See pages 3-5 supra) and Plaintiff cannot show this was pretextual.

11

The Plaintiff having failed to establish a <u>prima</u> <u>facie</u> case for Title VII discrimination, the Defendant's motion is in this respect GRANTED.

B.  <u>Plaintiff's Section 1981 Claim</u>

To establish a closely-related claim under 42 U.S.C. § 1981, the Plaintiff must show: (1) that he is a member of a racial minority; (2) Defendant's intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in Section 1981. <u>Lautere v. Int'l Bus. Mach. Corp.</u>, 216 F.3d 258, 261 (2d Cir. 2000).

Section 1981 claims asserting vicarious liability, however, cannot lie against municipalities; such entities may only be sued pursuant to 42 U.S.C. § 1983 in accordance with the principles laid down in <u>Monell v. New York City Dep't of Soc. Services</u>, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). <u>See</u> <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989).

Plaintiff's Section 1981 claim, then, fails for two distinct reasons: (1) As set out above, the record does not contain sufficient evidence with which a reasonable trier of fact could find an inference of discrimination; and, in any case, (2) Plaintiff improperly sues a municipality under Section 1981.

C.  <u>Plaintiff's Title VII and N.Y.S. Executive Law Retaliation Claims</u>

Plaintiff's retaliation claims are analyzed under the

McDonnell Douglas framework set out supra and therefore the initial burden lies with the Plaintiff to establish a prima facie case. See, e.g., Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010).

To establish retaliation under Title VII, the Plaintiff must show: (1) that he engaged in an activity protected under the anti-discrimination statutes; (2) the employer was aware of the Plaintiff's protected activity; (3) the employer took a materially adverse action against the Plaintiff; and (4) a causal connection existed between Plaintiff's protected activity and the adverse action taken by the employer. See, e.g., Henry v. Wyeth Pharmaceuticals, Inc., 616 F.3d 134, 146 (2d Cir. 2010).

Here, Plaintiff's claim is based solely on the belief that Deer Park shorted him in his final paycheck in the amount of $3,295.41 in retaliation for complaining about Superintendent Marino's "racist" remarks. Plaintiff calculates this figure by claiming that his salary was based on an eleven and a half, rather than twelve, month work year. However, Plaintiff offers no evidence in support of this calculation except for his ipse dixit. See Pl.'s Stmt. ¶¶ 68-70; Aff. of Bancroft Burke ¶¶ 139, 140. By contrast, Defendant has adduced both the Plaintiff's contract and the testimony of Deer Park's payroll clerk, both of which confirm that Plaintiff's salary was based instead on a twelve month work year. Def.'s Mot. Summ. J., Exs. E, V. Plaintiff has failed to

explain why either of these pieces of evidence is incorrect.  If Plaintiff's salary was based on a twelve month work year, the employer here has not "taken a materially adverse action" against him.  Thus, there is no genuine issue of material fact to reach the jury.

D.   Plaintiff's Breach of Contract Claim.

Like his retaliation claim dismissed supra, Plaintiff's contract claim is predicated on the assumption that his salary was based on an eleven and a half month work year.  Aff. of Bancroft Burke ¶¶ 139, 140.  However, Plaintiff has submitted no documentation in support of this theory.  In contrast, Defendant has filed both the Plaintiff's contract and the testimony of Deer Park's payroll clerk, both of which confirm that Plaintiff's salary was based on a twelve month work year.  Def.'s Mot. Summ. J., Exs. E, V.

A cardinal rule of contract law is that a motion for summary judgment in a contract dispute must be granted where the agreement's language is unambiguous and imparts a definite meaning.  See, e.g., Sayers v. Rochester Telephone Corp. Supplemental Management, 7 F.3d 1091, 1094 (2d Cir. 1993).

Here, in a section entitled "the following will outline the terms of employment under which you have been hired", Plaintiff's contract expressly states that "[t]his is a twelve month position" (emphasis added.)  Def.'s Mot. Summ. J., Ex. E.

14

The Court holds that this language is not susceptible of more than one interpretation and is plainly unambiguous.

Accordingly, Defendant's motion is GRANTED.

## CONCLUSION

For the foregoing reasons, with respect to all of Plaintiff's claims, the Court GRANTS Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Clerk of the Court is directed to terminate all pending motions and mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: February 3, 2011
Central Islip, New York